Cheryl D. PRICHARD and Craig Cantrell, Plaintiffs,

v.

Don LEDFORD, and Don Ledford Pontiac Buick, Inc., Defendants.

No. CIV–1–89–166.

United States District Court, E.D. Tennessee, S.D.

March 19, 1990.

On Application for Attorney Fees May 24, 1990.

See also 767 F.Supp. 1430.

James F. Logan, James F. Logan, Jr., & Associates, Cleveland, Tenn., for plaintiffs.

Roger E. Jenne, Jenne, Scott & Sellers, Cleveland, Tenn., for defendants.

## MEMORANDUM

EDGAR, District Judge.

Plaintiff Cheryl D. Prichard ("Prichard") brings this action pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* (1981), alleging that she is the victim of sexual harassment by Don Ledford ("Ledford"), the president of defendant Don Ledford Pontiac Buick, Inc., a Cleveland, Tennessee, automobile dealership.[1] Plaintiff Craig Cantrell ("Cantrell"), Ms. Prichard's brother, claims that he is the victim of retaliation in violation of 42 U.S.C. § 2000e-3(a) (1981).

This case was tried before the Court in a bench trial on March 12 and 13, 1990. For the reasons that follow, this Court will enter a judgment in favor of Prichard against Don Ledford Pontiac Buick, Inc. in the amount of $27,324.46 plus attorney's fees. Cantrell's claims will be dismissed.

### I. Facts

In the late spring of 1986, Prichard was in the process of being divorced from her then husband. She and Ledford struck up a relationship that by July had Prichard employed at Ledford's automobile dealership, Don Ledford Pontiac Buick, Inc., and by late summer had she and Ledford as lovers having consensual sexual intercourse on numerous occasions. In December of 1986, Prichard moved into a home owned by Ledford on Apache Trail near the dealership, where she paid no rent. At various times, Ledford made gifts to Prichard and her teenage daughter.

Meanwhile, at work, Prichard turned out to be a competent employee. She gradually acquired more and more responsibility and became one of the dealership's key employees. Eventually the love affair cooled. Ledford had become very jealous and wanted to restrict any other social activity or contact on Prichard's part. He did not want Prichard doing anything after business hours, except with him. Ledford occasionally became sexually oppressive at work, participating in such activities as body touching, using foul language with sexual connotations, turning out the lights in plaintiff's office, and grabbing the plaintiff. As a result of all this, in about June of 1987, Prichard left the Apache Trail house and moved into an apartment. She broke off the sexual relationship with Ledford at this time.

Ledford, however, took this hard. He continued to bother Prichard with phone calls at night and with pressure at the dealership. Prichard, in an attempt to disentangle her job from the love affair, tried to carry on a professional relationship at work.

In August of 1987, Ledford hired Cantrell as a car salesman with the idea that he might help bring his sister, Prichard, back into the fold. This proved to be a miscalculation.

On September 28, 1987, Prichard and another dealership employee, James Stewart, along with Cantrell and his girlfriend, made plans to go to a "bikini contest" at the Brainerd Beach Club, a nightspot in Chattanooga. Ledford got wind of it and physically tried to prevent them from leaving town. When this was unsuccessful, he picked up Rusty McMahon, another dealership employee, and followed the group to Chattanooga at a very high rate of speed to see where they were going. That night Ledford determined to fire Cantrell because "he was leading [Prichard] astray." However, he cooked up some specious reasons for firing Cantrell and had McMahon execute the firing the next day. At this

1. Although Don Ledford is named individually as a defendant, since the corporation was Prichard's employer, the corporation, not Ledford himself, is the proper defendant in this Title VII action. *See* 42 U.S.C. § 2000e(b) (1981) and 42 U.S.C. § 2000e-2(a) (1981).

point, Prichard, who had had enough of Ledford's continued sexual pressure, blew up and walked out of the dealership herself—never to return.[2]

Thereafter, Ledford, acting the spurned lover, called Prichard several times to ask her to come back to work. However, this offer was conditioned on Prichard moving back into the Apache Trail house and renewing the love affair. Prichard was unwilling to do this. Prichard has since worked at several other jobs and has moved to Florida where she now resides.

## II. Prichard's Claim

It is well settled that sexual harassment can manifest itself in two different forms: harassment that creates an offensive or hostile work environment and harassment involving the exchange of concrete employment benefits for sexual favors (*quid pro quo* discrimination). *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65–66, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49 (1986). *See, Yates v. AVCO Corp.,* 819 F.2d 630, 634 (6th Cir.1987); *Highlander v. K.F.C. Nat'l Management Co.,* 805 F.2d 644, 648 (6th Cir.1986); *Rabidue v. Osceola Refining Co., A Div. of Texas–American Petrochemicals, Inc.,* 805 F.2d 611, 618 (6th Cir. 1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

■ In order to prevail on a cause of action charging a sexually hostile work environment, the plaintiff is required to assert and prove that:

(1) [she] was a member of a protected class;

(2) [she] was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature;

(3) the harassment complained of was based on sex;

(4) the charged sexual harassment had the effect of unreasonably interfering with [her] work performance and creating an intimidating, hostile, or offensive working environment that affected seriously [her] psychological well-being [ ]; and

(5) the existence of *respondeat superior* liability [on the part of her employer, Don Ledford Pontiac Buick, Inc.].

*Highlander,* 805 F.2d at 649 (quoting *Rabidue,* 805 F.2d at 619–620) (citations omitted).

A determination as to the existence of this type of sexual harassment requires an analysis of the "totality of the circumstances." The Court "must adopt the perspective of a reasonable person's reaction to a similar environment under essentially like or similar circumstances." *Rabidue,* 805 F.2d at 620.

■ This Court is under no illusions as to the conduct of Prichard in this case. She was herself culpable to the degree that she willingly entered into the sex-work relationship with Ledford and placed herself in the position of being obliged to Ledford for her job, knowing that her job had something to do with her sexual relations with Ledford. However, Prichard's earlier voluntary sex-related conduct is not a defense to her Title VII sexual harassment claim here, because she has demonstrated that after June of 1987, at the latest, Ledford's sexual advances were unwelcome. *Meritor Savings Bank,* 477 U.S. at 68, 106 S.Ct. at 2406. The Court finds that there were numerous such advancements both at and away from the work place and both before and after June of 1987. These took the form of late night calls to plaintiff's home, the daily pressure at work to renew the former sexual relationship, the following of Prichard and her acquaintances away from the dealership, and the general unwanted brooding omnipresence of Ledford in Prichard's work and private life. All of this was such that it would have interfered with the psychological well-being of a reasonable employee. *Rabidue,* 805 F.2d at 620. Prichard's leaving the dealership on September 29, 1989, was a constructive discharge in that working conditions for her there were unpleasant to the extent that a

---

**2.** The termination of Cantrell also probably had something to do with Prichard's exit. However, this is essentially an offshoot of the sexual harassment.

reasonable person in her shoes would have felt compelled to resign. Moreover, the plaintiff's leaving under those conditions was surely foreseeable (or should have been foreseeable) to Ledford. *Yates v. AVCO Corp.,* 819 F.2d at 636–637.

■ To establish a *quid pro quo* claim of sexual harassment, the plaintiff must assert and prove that:

(1) [she] was a member of a protected class of persons;

(2) [she] was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors;

(3) [ ] the harassment complained of was based on sex;

(4) [her] submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that [her] refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment; and

(5) the existence of *respondeat superior* liability [on the part of her employer, Don Ledford Pontiac Buick, Inc.].

*Highlander,* 805 F.2d at 648. (citations omitted)

Prichard did value her job and would have returned to it had conditions been different. As concluded above, her termination was the result of a sexually hostile work environment. After she left, her submission to Ledford's demands was clearly a condition of her returning to work. This she refused to do. Thus, in this sense plaintiff was also the victim of *quid pro quo* sexual harassment which prevented her from returning to work for Ledford.

Thus, all of the elements of both genres of sexual harassment are present in this case. *Respondeat superior* is not an issue because Ledford was president of the defendant company.

### III. Cantrell's Claim

■ Cantrell claims that his termination was retaliatory in violation of 42 U.S.C. § 2000e–3(a) (1981). To make out a *prima facie* case of retaliation, Cantrell must show:

(1) that [he] engaged in a protected activity,

(2) [that he] was subsequently subjected by [his] employer to adverse employment action, and

(3) that a causal link existed between the two events.

*Yates v. AVCO Corp.,* 819 F.2d at 638 (citation omitted). *See, Irvin v. Airco Carbide,* 837 F.2d 724, 727 (6th Cir.1987).

■ Cantrell has not satisfied the first element of his retaliation claim. He clearly was not engaged in a protected activity. It is undisputed that Ledford terminated Cantrell, because he (in Ledford's eyes), instead of helping to bring his sister, Prichard, back to Ledford's bed, was instead leading Prichard "astray" to other men and social contacts. This is not protected activity within the contemplation of 42 U.S.C. § 2000e–3(a). There is no evidence that Cantrell's actions were motivated by his opposition to Ledford's sexual harassment *per se.* All Cantrell did was go with his sister and others to a bikini contest at the Brainerd Beach Club in Chattanooga.

### IV. Remedy

■ As a remedy for a Title VII violation, Prichard is presumptively entitled to back pay until the date judgment is entered. *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1159 (6th Cir.1985). The amount of that back pay, after deducting interim earnings is $27,324.46. Although reinstatement is also a presumptively favored remedy, it is not sought in this case. In any event, reinstatement would not be practical since Prichard has moved out of town. Instead, Prichard seeks front pay. This Court has some discretion on this point in determining the appropriateness of this particular remedy. *Id.* at 1159–60. Prichard is now 34 years old. There is nothing in the record to indicate that she will not be able to obtain employment in the future which would be comparable to her job at Don Ledford Pontiac Buick. The purpose of a Title VII award is to aid in ending alleged discrimination and rectifying the harm that it causes. *Id.* at 1159.

The Court finds that these goals are satisfied here without an award of front pay. In any event, the front pay figures provided by the plaintiff have not been properly discounted, thus depriving the Court of a proper basis for making a front pay award.

In addition, plaintiff is entitled to recover her attorney's fees in accordance with 42 U.S.C. § 2000e–5(k) (1981).

An appropriate judgment will enter.

## ON APPLICATION FOR ATORNEY FEES

Plaintiff Cheryl D. Prichard has been awarded back pay in this Title VII case in the amount of $27,324.46. She has now applied for her attorney's fees in accordance with 42 U.S.C. § 2000e–5(k).

 Plaintiff is a prevailing party and, therefore, is entitled to recover her attorney's fees. *Wooldridge v. Marlene Industries Corp.,* 898 F.2d 1169, 1173 (6th Cir. 1990). The method for determining reasonable attorney's fees under Title VII is the "lodestar" approach using the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The hourly rate "should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter v. State of Tennessee,* 805 F.2d 146, 149 (6th Cir.1986).

The Court finds, based upon all the affidavits that have been submitted by the parties, that the market rate which would be necessary to hire a competent lawyer in Bradley County, Tennessee, to handle this litigation is $100 per hour.

The Court further finds that the hours which plaintiff's attorney has expended in this case are reasonable and compensable with the following reduction. Some portion of attorney time was expended in litigating the claim of plaintiff's brother, Craig Cantrell, who did not prevail. Therefore, no fees may be awarded for time spent in litigating that claim. *Wooldridge,* 898 F.2d at 1173. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The time records submitted by plaintiff do not segregate this

time. However, the Court, in reviewing the time records along with the pleadings and briefs which plaintiff's counsel has filed in this case on behalf of Mr. Cantrell, estimates that 15% of the time by plaintiff's counsel is attributable to Mr. Cantrell's unsuccessful claim. The total hours expended by plaintiff's counsel will, therefore, be reduced by 10.5 hours.

Thus, the total time for which plaintiff may be compensated for attorney's fees is:

| | *Hours* |
|---|---|
| Total Claimed | 69.6 |
| *Less* Cantrell Claim | 10.5 |
| Balance | 59.1 |

When these hours are multiplied by the $100 hourly rate, the appropriate fee is, therefore, calculated at $5,910.00.

An appropriate order will enter.