Sheila L. THOMAS, Plaintiff,

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, et al., Defendant.

No. C2–95–159.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 28, 1998.

Kenneth Foye Murray, Columbus, OH, Joseph Scott Streb, Columbus, OH, for Sheila L. Thomas.

Mary Beth Foley, Ohio Atty. Gen., Employment Law Section, Columbus, OH, for Ohio Dept. of Rehabilitation and Corrections.

Roger Lee Clark, Kimble, Stevens, Young & Clark, Portsmouth, OH, for Charles H. Harrington.

## *OPINION & ORDER*

MARBLEY, District Judge.

Plaintiff, Sheila Thomas, brought this lawsuit against the Ohio Department of Rehabilitation and Correction ("ODRC") and Charles Harrington. Plaintiff alleges, *inter alia,* that while she was employed by ODRC and supervised by Harrington, Harrington wiretapped her office. Plaintiff's federal law claims include sex and race discrimination under Title VII, 42 U.S.C. § 2000(e) *et seq.;* violation of Title III of the Crime Control and Safe Streets Act, 18 U.S.C. § 2510, *et seq.;* and violation of 42 U.S.C. § 1981 and the Fourth, Fifth, and Fourteenth Amendments of the Constitution.

This cause comes before this Court on three dispositive Motions by ODRC to dismiss various claims in Plaintiff's suit. In this Opinion and Order, the Court will address:

(1) ODRC's November 27, 1996 Motion to Dismiss, (2) ODRC's December 3, 1996 Motion for Summary Judgment, and (3) ODRC's February 25, 1997 Motion to Dismiss Plaintiff's Second Amended Complaint and/or For Summary Judgment.

## I. Facts [1]

Plaintiff Sheila Thomas, an African–American woman, began to work for the Ohio Department of Rehabilitation and Corrections in September, 1988. Initially hired as a clerical specialist, she was promoted to the position of substance abuse secretary at the Franklin County Pre-release Center (FCPC) in July, 1991. There, Plaintiff's immediate supervisor was Charles Harrington, psychologist and supervisor of the Substance Abuse Department.

On June 24, 1994, Plaintiff discovered a wireless microphone behind her desk. She immediately call Lea Pierce, Counselor of the Substance Abuse Program, who came directly to Plaintiff's office. After listening to Plaintiff's account, Ms. Pierce escorted her to the union steward. The steward called Pam Means, the union president, who also came over to speak with Plaintiff that day. Plaintiff filed several incident reports regarding the wiretapping device in her office; she suspected that her supervisor, Harrington, had placed it there. ODRC immediately placed Harrington on administrative leave, revoking all supervisory authority he had over Plaintiff. Harrington never supervised Plaintiff after June 24, 1994.

That summer, the Ohio Highway Patrol ("OHP") commenced an investigation of the incident. As part of this investigation, OHP Sergeant Campbell conducted an interview of Harrington. According to Campbell, Harrington admitted that he wiretapped Plaintiff's office and said this decision was motivated in part because "there were some problems among his staff over there, that he thought it was racial in nature, and that he decided to put the bug in her office to monitor it and find out what was going on, what the problem was." The parties are not in agreement as to whether the device ever actually worked. A criminal case was

brought against Harrington, in which he again admitted that the wiretapping device belonged to him and that he had "bugged" Plaintiff's office.

Plaintiff remained with the ODRC, and kept her job. She has not been demoted, nor has she lost any salary or benefits. She instituted this action on February 8, 1995.

## II. ODRC's Motion to Dismiss Plaintiff's Crime Control and Safe Streets Act Claim, Title VII Claims and Section 1981 Claim

### A. Crime Control and Safe Streets Act Claim

ODRC argues that Plaintiff's claim that ODRC violated Title III of the Crime Control and Safe Streets Act, 18 U.S.C. § 2510, *et seq.*, which prohibits the intentional interception of oral or wire communications, must be dismissed because ODRC itself did not intercept any of Plaintiff's conversations. The Court agrees.

Section 2520 of the Crime Control and Safe Streets Act states:

> Except as provided in section 2511(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

Quite simply, ODRC is not the entity which engaged in such violation.

Liability under this Act is imposed only upon those persons who intentionally intercept a wire or oral communication, or anyone who procures another to intercept such communications. 18 U.S.C. § 2511(1); *See also PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808, 832 (D.N.J. 1993). An "interception" requires "the aural or other acquisition of the contents of any ... oral communication." *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742 (4th Cir.1994). There is no "interception" by a person or entity that never acquires the contents of any conversation. *Id.* Plaintiff has not produced any evidence showing that ODRC, as an

---

**1.** Except where explicitly noted, the facts as set out here are not disputed by either party.

entity, acquired any of her conversations. Further, since § 2511 proscribes *intentional* interceptions, Plaintiff must be able to show that ODRC had knowledge of or authorized Harrington's actions. Plaintiff has never claimed or offered evidence showing that anyone (besides Harrington) knew about the listening device, acquired the contents of any of her conversations, or procured Harrington to do so. Rather, ODRC policy explicitly *prohibits* such conduct. Indeed, ODRC officials took immediate punitive action against Harrington as soon as they were informed of his conduct. Harrington's egregious actions were clearly unauthorized and outside the scope of his employment, and cannot be attributed to ODRC as an institution.

The necessary elements of intent and actual interception are lacking with regard to ODRC. Therefore, ODRC's December 3, 1996 Motion for Summary Judgment with regard to Plaintiff's claim under 18 U.S.C. § 2510, *et seq.*, is **GRANTED.**[2]

### B. Title VII Claims

Plaintiff's Title VII claims are based on theories of sexual and racial harassment and retaliation. ODRC has moved to dismiss these claims because the facts in this case, even when viewed in the light most favorable to Plaintiff, do not support a finding that ODRC discriminated against Plaintiff.[3] As set forth below, this Court agrees.

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

#### 1. Sex and Race Discrimination Claims.

In her original Complaint, Plaintiff alleged that Harrington's wiretapping actions were motivated by sex discrimination. In her Second Amended Complaint, she added a charge of race discrimination. Both of these claims fail because Plaintiff has not shown damages or lack of remedial action by ODRC.

The burden of proof paradigm is well-established for Title VII claims of racial or

---

**2.** The Court notes that this holding applies only to ODRC. Defendant Harrington has not moved to dismiss the wiretapping charge with regard to him, and the analysis in that instance would be substantially different. Thus, the wiretapping charge against Harrington remains.

**3.** ODRC moved for dismissal of Plaintiff's sex discrimination and retaliation claims in its December 3, 1996 Motion for Summary Judgment, and for dismissal of Plaintiff's race claim in its February 23, 1997 Motion to Dismiss. The analysis for all of ODRC's Title VII motions involve substantial overlap; accordingly, the Court will address all of them together in this section.

sexual discrimination. Plaintiff bears the initial burden of establishing a *prima facie* case by adducing evidence which, if not explained, gives rise to an inference of unlawful discriminatory activity on the part of the employer. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case of discrimination under Title VII, Plaintiff must show the following:

 a) that she is a member of a protected class;

 b) that she was qualified for the job she held;

 c) that despite her qualifications, she suffered adverse employment action; and

 d) that non-members of the protected class were treated more favorably than Plaintiff.

*Id.; Mitchell v. Toledo Hospital*, 964 F.2d 577, 582–83 (6th Cir.1992).

 In the present case, Plaintiff meets the first two requirements of a *prima facie* showing. As an African–American woman, she is a member of two protected classes: race and gender. And it is undisputed that Plaintiff was qualified for the position she holds. However, Plaintiff has failed to show that she suffered an adverse employment action or that ODRC has treated non-members of protected classes more favorably. As such, she has failed to establish a *prima facie* case of discrimination.[4]

 Plaintiff has not demonstrated that she suffered any damages, other than understandable anger and shock at finding the device, as a result of the wiretapping incident. Although she alleged job detriment in her complaint, ODRC has offered evidence showing that Plaintiff still works at ODRC, in the same position, and at the same salary. Not only has Plaintiff failed to refute this evidence as required by *McDonnell Douglas*, but she admitted in her deposition that she remains employed by ODRC and has not been demoted, denied income or benefits, or suffered *any* job detriment. Anger and shock are not cognizable harms under Title VII.

 Failure to show employment damages is a fatal flaw in Plaintiff's case. Summary judgment is appropriate in Title VII actions where the employee suffered no adverse job consequences as a result of alleged harassment and the employer exercised reasonable care to prevent and correct harassing behavior. *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998).

Further, because Plaintiff has shown no adverse employment action, she has failed to demonstrate that ODRC treated her any differently than it would have treated a non-member of a protected class. Plaintiff has not even alleged that she holds a different position, or receives less salary or benefits than any non-protected member with the same training and experience. Nor has Plaintiff alleged that ODRC would have taken more prompt or effective remedial action for a victim of wiretapping who was not a member of a protected class.[5]

 Plaintiff's claim that Harrington was racially motivated is a bit stronger, as she can point to the statement in which Harrington allegedly told Sergeant Campbell of the Ohio Highway Patrol that there were racial tensions in the office which prompted his decision to place the wiretapping device. This statement does raise a material question of fact as to whether Harrington was motivated by racial animus when he decided to wiretap Plaintiff's office. Plaintiff does not allege, however, that ODRC was aware of any sexual or racial motivation on Harrington's part, nor does she allege that she felt the working environment was sexually or racially hostile because of Harrington's personal inclinations.

 Notwithstanding, these considerations are immaterial, as it is clear that Plaintiff has suffered

---

4. As Plaintiff has failed to establish a *prima facie* case, the Court need not address considerations of additional burden-shifting.

5. Although Plaintiff contends that Harrington was motivated by gender animus, she offers no evidence to support this claim. Plaintiff has the burden of showing that Harrington's attempted eavesdropping related somehow to Plaintiff's status as a woman. The only evidence she proffers is some pornographic materials found in Harrington's office. However, Plaintiff has not in any way linked the presence of these items to Harrington's placement of the wiretapping device, or his motivation for doing so. Plaintiff has submitted no other evidence to show that Harrington's actions were motivated by sexual discrimination.

Finally, ODRC has presented evidence that it took prompt remedial action, which Plaintiff has not disputed. Plaintiff concedes that she never made a complaint of sex or race discrimination to anyone of authority at FCPC, ODRC or her union. ODRC had no prior notice of any wrongdoing by Harrington. ODRC's policy forbade wiretapping activity. Once it learned of the wiretap, ODRC immediately placed Harrington on administrative leave and commenced an investigation into the incident. Harrington never supervised Plaintiff after she found the wiretapping device; in fact, he never returned to work after the discovery.

The Sixth Circuit has held that where, as here, an employer takes prompt, effective action after it discovers harassment, it cannot be held liable under Title VII. *Wathen v. General Electric Company*, 115 F.3d 400, 407 (6th Cir.1997). Like the defendants in *Wathen*, ODRC implemented and enforced policies explicitly prohibiting wiretapping, and upon Plaintiff's filing a complaint with ODRC, it took prompt remedial action. Therefore, ODRC must be relieved of liability as a matter of law. *Id.*

Plaintiff has failed to meet her burden of proof with regard to showing damages or lack of remedial action. Therefore, ODRC's December 3, 1996 Motion for Summary Judgment with regard to Plaintiff's Title VII sexual discrimination claim and its February 25, 1997 Motion for Summary Judgment with regard to her Title VII race discrimination claim are **GRANTED**.

### 2. Retaliation Claim.

Plaintiff's Title VII retaliation claim suffers from the same weaknesses as her sex claim. Considering all facts alleged by Plaintiff to be true, her charges do not amount to a legally cognizable retaliation claim as a matter of law.

 A plaintiff must establish a *prima facie* retaliation claim by showing: "(1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of [her] civil

rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Harrison v. Metropolitan Government of Nashville and Davidson County*, 80 F.3d 1107, 1118 (6th Cir.1996). Plaintiff has established the first two prongs of this test: she engaged in activity protected by Title VII by filing this lawsuit, and ODRC was aware of the suit. However, she has not alleged facts which, even if true, would constitute adverse employment action by ODRC. Plaintiff also has not established a causal connection between bringing this suit and the incidents she claims were retaliatory. Failing to meet the third and fourth prongs of the *Harrison* test, Plaintiff has not established a *prima facie* case of retaliation.

Plaintiff claims she has suffered adverse employment action in five ways. First, her complaint alleges demotion, loss of benefits and other job detriments. As explained above, however, ODRC refuted these claims by showing that Plaintiff has maintained her job and benefits. Plaintiff subsequently admitted that she suffered no career detriment.

Second, although Plaintiff avers that her performance reviews were downgraded, she has provided no evidence to that effect. A party moving for summary judgment may discharge its burden of proof by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. ODRC has done so; Plaintiff has failed to refute this showing. Plaintiff's bare allegation that her reviews have been downgraded is not sufficient to sustain her retaliation claim.

 Third, Plaintiff alleges that an ODRC warden told her to drop her lawsuit because she was not going to win. This Court assumes for summary judgment purposes that this allegation is true. One stray comment, however, is not actionable as retaliatory treatment. A recurring point in Supreme Court Title VII jurisprudence is that "simple teasing, offhand comments and iso-

---

no adverse employment action and was treated no differently than non-member of a protected class. The failure to produce evidentiary support

to meet the elements of a Title VII claim is fatal to Plaintiff's cause of action.

lated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 118 S.Ct. at 2283 (internal quotations omitted). Harassment must be pervasive, not sporadic or occasional, in order to be actionable. *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir.1985). A single comment by a supervisor, which was neither threatening on its face nor followed by any substantive retaliatory action, constitutes an isolated, offhand comment and cannot support a claim of retaliation.

Fourth, Plaintiff states that she was "investigated" for wearing two different colored shoes, and contends that this "investigation" constituted retaliatory conduct. This incident occurred when Plaintiff arrived at work one morning wearing an unmatched pair of shoes, clocked in, realized her mistake, and went home to change her shoes. An administrator called to ascertain that Thomas clocked out for the time she went home to change her shoes. Plaintiff argues this call was harassment in retaliation for her lawsuit. It stretches the imagination and this Court's credulity to presume this "investigation" constituted retaliation. There is simply no legal basis for this argument. Moreover, Plaintiff has not established any causal link between this incident and the filing of her lawsuit. Plaintiff's mere conclusory statements that actions constituted retaliatory harassment are insufficient to overcome a motion for summary judgment. *Miller v. Solem*, 728 F.2d 1020, 1026 (8th Cir.), *cert denied* 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984).

Fifth, Plaintiff claims that other employees joked with her after the incident, asking things like, "Are you wearing a mike, Sheila?" However, in her deposition Plaintiff stated that she did not feel this was "harassment." In fact, Plaintiff stated that the people who made the comments were friends with whom she eats lunch. She never told them to stop, or told them she was offended. Nor did she report these comments to officials at ODRC. ODRC cannot be held liable for conduct by co-workers of which it was not aware. Again, Plaintiff has not shown that the filing of her lawsuit prompted these remarks.

Finally, all of Plaintiff's retaliation scenarios relate to isolated, miscellaneous incidents. It is difficult to identify exactly how she was damaged by any of these situations. No terms or conditions of Plaintiff's employment were affected. Most Title VII retaliation claims are based on substantive employment actions such as discharge or demotion. *See, e.g., Prichard v. Ledford*, 767 F.Supp. 1425 (E.D.Tenn.1990); *Boden v. Anaconda Minerals Co.*, 757 F.Supp. 848 (S.D.Ohio 1990). Even if all the incidents alleged by Plaintiff are completely accurate, they do not, even in combination, rise to the level of adverse employment action anticipated by Title VII retaliation jurisprudence.

All of Plaintiff's claims regarding the alleged "retaliation" by ODRC are lacking in either the "adverse employment action" or the "causal link" requirements of *Harrison.* Therefore, ODRC's December 3, 1996 Motion for Summary Judgment in Plaintiff's Title VII retaliation claim is **GRANTED.**

### C. Section 1981 Claim

ODRC also moves to dismiss Plaintiff's 42 U.S.C. § 1981 claims. It appears from her Complaint that Plaintiff is attempting to bring a § 1981 sex discrimination claim against Defendants ODRC and Harrington. Sex discrimination claims are not actionable under § 1981. *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Plaintiff cannot bring a sexual discrimination claim under that statute.

Further, the Supreme Court has concluded that the doctrine of *repondeat superior* does not apply to § 1981 actions. *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Therefore, ODRC cannot be held liable for the unauthorized, concealed acts of Harrington.

For these reasons, ODRC's December 3, 1996 Motion to Dismiss Plaintiff's § 1981 race and sex claims is **GRANTED.**

### III. ODRC's Motion to Dismiss Plaintiff's Crime and Safe Streets Act Claim as a Violation of Ohio's Sovereign Immunity

ODRC moves to dismiss Plaintiff's wiretapping claim under 18 U.S.C. § 2510 *et seq.,*

on the grounds that the Crime and Safe Streets Act is an unconstitutional attempt to abrogate Ohio's Eleventh Amendment sovereign immunity. However ODRC's November 27, 1996 motion is **MOOT** as a result of this Court's dismissal, *supra*, of Plaintiff's § 2510 claim on other grounds.

### IV. ODRC's Motion to Dismiss Plaintiff's Second Amended Complaint and/or for Summary Judgment

#### A. Waiver

ODRC moves to dismiss all of Plaintiff's claims in this action because Plaintiff recently filed a nearly identical suit in the Ohio Court of Claims. Relying on Ohio Revised Code section 2743.02(A)(1), ODRC argues that Plaintiff waived all her claims by filing in the Court of Claims. Section 2743.02(A)(1) states "filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any officer or employee, as defined in section 109.36 of the Revised Code." Additionally, ODRC notes, the Sixth Circuit held in *Leaman v. Ohio Department of Mental Retardation and Development Disabilities*, 825 F.2d 946, 952 (6th Cir.1987), that such filing results in a complete waiver of federal causes of action, as well as causes of action based upon state law.

This would be a compelling argument *if only* ODRC were an "officer or employee" as defined in Ohio Rev.Code § 109.36. But § 109.36 defines "officer or employee" as a *person* who, "at the time a cause of action against the person arises," is employed by, or is rendering some service to, the state. Ohio Rev.Code § 109.36(A)(1). This definition clearly does not include agencies or institutions of the state. In fact, such entities fall under the umbrella definition of the "state" itself for purposes of Ohio law. Ohio Rev.Code § 109.36(B). Moreover, the Court in *Leaman* held only that it was proper to dismiss *individual* defendants—not any state institution—pursuant to the plaintiff's § 2743.02(A)(1) waiver.

Thus, the waiver dictated by § 2743.02(A)(1) does not apply to ODRC because it is not an "officer or employee" of the state. For the above reasons, ODRC's February 25, 1997 Motion to Dismiss based on Plaintiff's supposed waiver is **DENIED.**

#### B. Plaintiff's Failure to Exhaust Title VII Administrative Remedies

ODRC further argues that Plaintiff's Second Amended Complaint, adding a claim of racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq,* should be dismissed because Plaintiff has failed to exhaust her administrative remedies with regard to that charge. This motion is **MOOT,** because of this Court's dismissal of Plaintiff's Title VII race claim as a matter of summary judgment, *supra.*

#### C. Motion to Dismiss Plaintiff's Race Claim

ODRC moves to dismiss Plaintiff's Title VII race claim as a matter of summary judgment. Because this motion entails the same analysis as ODRC's motion to dismiss Plaintiff's sex discrimination claim under Title VII, the Court included its disposition in that discussion, *supra.* As explained above, ODRC's February 25, 1997 Motion for Summary Judgment on Plaintiff's Title VII race claim is **GRANTED.**

### Conclusion

For the foregoing reasons, Defendant ODRC's December 3, 1996 Motion for Summary Judgment is **GRANTED** in full; ODRC's November 27, 1996 Motion to Dismiss Plaintiff's claim under the Crime and Safe Streets Act is **MOOT**; and ODRC's February 25, 1997 Motion for Summary Judgment is DENIED as to Plaintiff's alleged Court of Claims waiver, **MOOT** as to Plaintiff's alleged failure to exhaust Title VII administrative remedies and **GRANTED** as to Plaintiff's Title VII race discrimination charge.

**IT IS SO ORDERED.**