V CABLE, INC., and Cablevision Systems Corporation, Plaintiffs,

v.

Thomas GUERCIO, Defendant.

Nos. 94–CV–5412 (DRH), 97–CV–7466 (DRH).

United States District Court, E.D. New York.

June 26, 2001.

Daniel J. Lefkowitz, Jericho, NY, for plaintiffs.

Felix T. Gilroy, Staten Island, NY, for defendant.

## *MEMORANDUM AND ORDER*

HURLEY, District Judge.

The captioned cases were tried before the Court non-jury. The purpose of this decision is to provide my findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

By two separate complaints, later consolidated, V Cable, Inc. and Cablevision Systems Corporation ("Cablevision" or "plaintiffs") have asserted claims against defendant Thomas Guercio ("Guercio" or "defendant"), under the Communications Act of 1934, as amended, 47 U.S.C. §§ 553(a)(1), 605(a), and 605(e)(4) (the "Communications Act"). Specifically, the claims against Guercio are as follows:

First, Cablevision alleges that Guercio has sold and distributed "pirate" cable television converter-decoder equipment with knowledge and intent that such devices be used by third party purchasers and end-users for unauthorized interception and reception of Cablevision's satellite-delivered premium and pay per view programming services. This alleged conduct is in violation of sections 605(e)(4) and 553(a)(1) of the Communications Act. . . .

Second, Cablevision alleges that Guercio has personally used "pirate" cable television converter-decoder equipment to intercept and receive Cablevision's premium and pay per view cable television programming services which defendant was not authorized to receive in violation of sections 605(a) and 553(a)(1) of the Communications Act. The use of "pirate" cable television converter-decoder equipment to intercept satellite delivered cable television programming is

a violation of sections 605(a) and 553(a)(1) of the Communications Act.

(Pls.' Rev. Pre–Trial Order at 2–3.)

Defendant in his answer and during his trial testimony denied that he purchased, used, or distributed pirate cable television converter-decoder equipment. Additionally, defendant has asserted a number of affirmative defenses, including that plaintiffs' actions are time barred under the applicable statute of limitations.

### *FINDINGS OF FACT*

1. *Stipulated Facts*

a) At all times hereinafter mentioned, Cablevision Systems Corporation is a corporation organized and existing under the laws of the State of Delaware which is duly registered to do business in New York State and having its principal business offices at One Media Crossways, Woodbury, New York.

b) At all times hereinafter mentioned, defendant Thomas Guercio is an individual residing at 6 Cliftwood Place, Kings Park, New York 11754.

c) Cablevision operates cable television systems pursuant to franchises awarded to it by the political subdivisions of Nassau and Suffolk Counties, New York, which authorize it to construct, operate and maintain cable television systems in Nassau and Suffolk Counties, New York. Cablevision offers cable television services to subscribers who request and pay for them.

d) Cablevision's programming is offered to its subscribers in "packages" of programming services. "Basic" and "Family" tiers are packages of programming services that a subscriber receives at a monthly rate. Subscribers may also elect to purchase certain premium programming services, such as Cinemax,

Home Box Office and Showtime, for an additional monthly charge per service.

e) Additionally, Cablevision offers pay per view programming, a service enabling a subscriber to purchase individual movies, sporting events, or other entertainment for a pre-event fee over and above the subscriber's regular monthly fee.

f) Each subscriber is entitled to receive only that level of programming services that he or she selects and purchases.

g) The signals for Cablevision's cable television services are received via satellite and transmitted from Cablevision's satellite reception facilities to subscribers' homes through a network of cable wiring and equipment.

(*Id.* at 4–6.)

### 2. Cable Television Converter–Decoder Equipment

To prevent its subscribers from receiving services that they have not purchased, Cablevision encodes or "scrambles" the signals for all of its premium and pay per view programming. When signals to Cablevision's premium or pay per view programming are scrambled, that programming is rendered unviewable by a subscriber who has not purchased such programming. In conjunction with its encryption security process, Cablevision provides to those subscribers who have purchased any premium or pay per view programming a device known as a "converter-decoder." Cablevision's authorized converter-decoder devices are "addressable," which means that Cablevision programs each device in a subscriber's home from its central computer to descramble only those specific premium and pay per view programming services that a subscriber has purchased.

Conversely, any premium or pay per view programming that the subscriber has not purchased will not be descrambled by the device furnished by Cablevision. The industry is plagued by individuals and entities who market unauthorized "pirate" converter-decoders which permit a purchaser of the device to obtain Cablevision's scrambled premium and pay per view programming without paying the required fee to Cablevision.

### 3. Cablevision Has Established That Defendant Purchased Pirate Descrambling Devices from Global Cable Network

Before proceeding to the proof concerning Global Cable Network ("Global"), two preliminary matters must be discussed, viz., (1) whether plaintiffs' claims as to defendant's purchases from Global are time-barred and (2) the admissibility of the Global records that indicate purchases made by defendant.

The Communications Act does not contain a statute of limitations. Under such circumstances, the Court is required to look to a state statute of limitations governing an analogous claim and apply that limitations period to the federal cause of action. *Goldstein v. Time Warner N.Y. City Cable Group,* 3 F.Supp.2d 423, 430 (S.D.N.Y.1998). However, although state law controls the time period in which a suit must be brought, federal law controls when the statute begins to run. *Cullen v. Margiotta,* 811 F.2d 698, 725 (2d Cir.1987). A claim accrues in federal court for the purpose of commencing the statute of limitations period when the party knew or had reason to know of the existence of the injury that constitutes the basis for its claim. *Merchant v. Levy,* 92 F.3d 51, 56 (2d Cir.1996).

As the trier-of-fact, the Court finds—for the reasons to be provided shortly—that

the defendant purchased descrambling devices from Global during the course of a seventeen month period beginning in January 1990. The action bearing index no. 94–CV–5412 was commenced by complaint filed on November 23, 1994. Plaintiffs learned that defendant had acquired devices from Global on or about October 1993 when it received a printout of Global sales into Cablevision's market area from General Instrument Corporation.

Notwithstanding defendant's protestations to the contrary, there is no convincing evidence indicating that Global should have known of those purchases prior to that date. Therefore whether the statute is two years, as defendant contends (relying on 47 U.S.C. § 415), or three years, as plaintiffs maintain, (citing N.Y.C.P.L.R. § 214(2); *Goldstein*, 3 F.Supp.2d at 431–32), the 1994 action was timely brought.

Attention will now be directed to defendant's second objection to the admissibility of the Global sales records. To place that objection in context, some background information is required. Global was a major distributor of descrambling devices. The Federal Bureau of Investigation ("FBI") obtained a search warrant for its offices. In executing the warrant, possession was taken of Global's computers and related records. Those computers were then secured in an FBI office. Michael Burgeles ("Burgeles") was hired to review Global's records to determine purchases from Global.

■ Burgeles's testimony concerning his expertise, and the manner in which he retrieved defendant's name, address and the dates of his orders from Global's computers was convincing. Cablevision proffered the resulting evidence, viz., plaintiffs' Exhibits 1 and 2, as business records under Federal Rule of Evidence 803(6) and, alternatively, under the residual exception embodied in Rule 807. The Court, while permitting the evidence to be adduced,

reserved decision on its admissibility to permit counsel to brief the issue.

Plaintiffs' Exhibits 1 and 2 have a significant stamp of trustworthiness as is evident from, inter alia, a review of the testimony furnished by Burgeles. Moreover, the procedural prerequisites to the invocation of Rule 807 have been satisfied. Accordingly, the documents are found to be admissible under Rule 807, obviating the need to address their admissibility under Rule 803(6).

Having found that plaintiffs' claims predicated on the Global records are not time-barred, and are admissible, suffice it to say that those records convince the Court that defendant purchased the items listed. In reaching that conclusion, I have considered defendant's argument that someone could have used defendant's name and address and that this possibility is fatal to the government's proffer. However, as noted by a witness for plaintiffs, using someone else's name and address would typically prevent the caller from obtaining the items in question.

That defendant was the purchaser of the subject items is further evidenced by the conversations he had with James Buglion ("Buglion"), a principal of J.E.S. Inc. ("J.E.S."), a now defunct marketer of descrambling devices. Buglion testified that during those conversations, Guercio indicated that he had lost his initial supplier, which supplier (presumably Global) was located somewhere north of San Diego, and provided information about his employment in the education field.

In sum, I find that defendant was a mail order purchaser from Global as reflected in plaintiffs' Exhibits 1 and 2.

4. *Cablevision Has Established That Defendant Purchased Descrambling Devices from J.E.S.*

Defendant has raised two points concerning this portion of plaintiffs' case, viz.,

the statute of limitations and whether Buglion's testimony should not be considered based on a purported violation of 18 U.S.C. § 201. These objections will be addressed in turn.

a. *Statute of Limitations.* The mail order purchases from J.E.S. by an individual identifying himself as Guercio were made in September and October of 1991. However, plaintiffs did not discover that J.E.S. had sold pirate descramblers to such individual until Buglion so advised them in the Spring of 1997. Case No. 97–CV–7466 was commenced by plaintiffs filing their complaint in December of 1997, i.e., less than a year later. As was true with respect to Global, no convincing information has been provided by the defense to indicate that plaintiffs should have known of the purchases by Guercio earlier and, accordingly, this action was timely brought.

■ b. *18 U.S.C. Section 201(c)(2) and (3).* Section 201(c)(2) provides that it is a crime for a party to purchase the testimony of a fact witness. Subdivision 3 makes it criminal for a fact witness to accept anything of value in return for his or her testimony. Buglion, after his company was criminally prosecuted, was sued by Cablevision. That case was settled for the sum of $250,000. It was agreed that $50,000 of that amount would be forgiven if Buglion provided information about the illegal marketing of descramblers to plaintiffs' security personnel.

Buglion credibly testified that he had completed the services required for the $50,000 credit "around June of '98, May of '98." (Trial Transcript ("Tr.") at 207.) His testimony was given before this Court a year and a half later, with his attendance being obtained via the service of a subpoena. Under the circumstances, plaintiffs' arrangement with Buglion does not run afoul of Section 201. Accordingly, defendant's argument that Buglion's testimony should not be considered is rejected.

■ Attention will now be directed to the question of whether Cablevision has established that defendant purchased pirate descramblers from J.E.S. Buglion testified that he spoke to defendant five or six times. He remembered those conversations in part because he and defendant had discussed the area in which Buglion had grown up which was close to defendant's residence in Kings Park. He also testified that defendant explained that he was endeavoring to market the descrambling devices through advertisements in national sports magazines.

Buglion identified plaintiffs' Exhibit 4 as a series of sheets which were downloaded from his computer, which sheets he recognized based on, inter alia, their format. Those sheets detailed the items that J.E.S. sold to defendant, which items the witness described and explained how they were compatible with the scrambling technology used by plaintiffs.

Defendant objected to Buglion's testimony concerning conversations had with "Tom Guercio" as being hearsay, using the example of an individual identifying himself as Bill Clinton checking into a hotel if offered to prove, without verification, that the person presenting himself was in fact the ex-president.

Defense counsel's hearsay objection is correct. But the concomitant conclusion that the evidence is inadmissible is not. Buglion's testimony about his conversations with a person identifying himself as Guercio is "admissible as non-hearsay ... laying a foundation for further evidence" tending to prove that the caller to J.E.S. was in fact defendant. *United States v. Lieberman,* 637 F.2d 95, 101 (2d Cir.1980). Such further evidence is found in (1) Global's records identifying Guercio as a pur-

chaser of commercial quantities of pirate descrambling devices and (2) the caller's explanation to Buglion that he was contacting J.E.S. because he had lost his earlier source of supply. Significantly, that explanation by the person who identified himself as Guercio dovetails with (1) the FBI executing a search warrant, and confiscating Global's computers in June of 1991, and (2) the caller's initial purchase from J.E.S. on September 11, 1991.

Additionally, Buglion's recollection that the caller indicated that he lived in Kings Park and was an educator parallels the defendant's trial testimony as to his residence and vocation. Based on the foregoing, the Court is satisfied that the caller was Guercio, and—given that evidence, as well as other evidence in the case—that he purchased pirate descramblers from J.E.S. on four separate occasions between September 11, 1991 and October 28, 1991.

### 4. *Absence of Direct Evidence of Use or Distribution by Guercio*

There is no direct evidence that Guercio either used or distributed one or more pirate descrambling devices in plaintiffs' market area or, parenthetically, elsewhere, notwithstanding Cablevision's efforts to obtain such information. (Tr. at 285–86.)

### CONCLUSIONS OF LAW

### 1. *Applicable Statute*

As noted earlier, plaintiffs claim that Guercio violated the following statutes:

a) 47 U.S.C. § 553(a)(1). That provision of the Communications Act reads in pertinent part:

(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

b) 47 U.S.C. § 605(a). That provision of the Communications Act reads in pertinent part:

No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

c) 47 U.S.C. § 605(e)(4). That provision of the Communications Act reads:

Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

Also relevant to plaintiffs' cause of action is Section 605(e)(3)(A) which provides that "[a]ny person aggrieved by any violation of subsection (a) of this section or paragraph 4 of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction."

### 2. *Cablevision Has Not Established That It Is an Aggrieved Party under the Communications Act with Respect to the Conduct of Defendant*

A perusal of the statutes underlying the present action indicates that it is

not a crime, nor a basis for a civil claim, for an individual to purchase or possess pirate descrambling devices, even if it appears that possession is with the intent to distribute. *Compare* 47 U.S.C. §§ 553(a)(1), 605(a) and 605(e)(4) *with* 21 U.S.C. § 841(a) (making it a crime to possess a controlled substance with the intent to distribute). Plaintiffs implicitly acknowledge that fact but argue that the "total of '227 pirate' descramblers [purchased by defendant], a number far in access of the number of devices that he himself could personally use[,] ... compels the conclusion that Guercio purchased these devices to, and ultimately did, re-sell and re-distribute them to third parties." (Pls.' Proposed Findings of Fact and Conclusions of Law ¶ 37 at 18–19.)

Although plaintiffs made efforts to purchase a descrambler from defendant, those efforts were unsuccessful. *Compare Frontiervision Oper. P'ship v. Chiaravelotti,* No. CIV. 99–0004–B, 2000 WL 892026, at *1 (D.Me. Mar.3, 2000) (plaintiff's employee "called one of the numbers in the advertisement and [purchased] a pirate box for use in Plaintiffs' market area for $225").

Cablevision concedes that it has no direct evidence that defendant either used or distributed any of the items purchased from either Global or J.E.S. Moreover, it has offered no evidence, such as unexplained bank deposits in amounts suggesting he was selling descramblers, or other circumstantial evidence of sale, with one exception.

The one exception is that defendant purchased over $20,000 in product from Global in fifty-five separate transactions. The serialized nature of the purchases of these devices for which there is no legitimate retail market or legal purpose, *see Cablevision Sys. Corp. v. Muneyyirci,* 876 F.Supp. 415, 419 (E.D.N.Y.1994), as well as the sheer volume involved, strongly suggest that defendant was marketing descramblers for use somewhere. *See Cablevision Sys. Corp. v. DePalma,* No. CV–87–3528, 1989 WL 8165, at *4 (E.D.N.Y. Jan. 17, 1989). But unless the sales were made to customers within Cablevision's market area, i.e., Nassau and Suffolk Counties, Cablevision has no basis to complain. *Cf. Chiaravelotti,* 2000 WL 892026, at *3 ("Defendant argues Plaintiff's evidence is speculative as to whether there were any sales into Plaintiffs' market area. As indicated in the Court's findings of fact, the Court agrees [notwithstanding defendant's admission that he had sold 175 pirate descramblers], except as to the four sales [where the evidence clearly established that the sales were made] 'into [defendant's] market area' "); *Muneyyirci,* 876 F.Supp. at 419 ("[T]he Court has identified 373 sales of single decoders or combination units to purchasers residing within Cablevision's authorized franchise areas, in addition to the 17 sales that defendants concede were illegal.").

Unless Cablevision proves sales by Guercio to customers within its market area, it is not a "person aggrieved" under Sections 553(c)(1) and 605(e)(3)(A) and, accordingly, may not recover damages for defendant's violations, if any, of the Communications Act. *See Chiaravelotti,* 2000 WL 892026, at *3 ("These four sales [by defendant within plaintiffs' market area] are sufficient ... to give Plaintiff standing as a 'person aggrieved' under the statutes.").

Cablevision presented no evidence to suggest, much less establish, that Guercio sold in Nassau or Suffolk Counties. The scant information available tends to suggest otherwise. Thus we know from the testimony of Buglion that defendant was advertising in a "sports national publication," (Tr. at 181), rather than through a local Pennysaver or other medium target-

ing a local audience. Buglion cryptically reported that Guercio's marketing strategy provided him with "a little bit of a comfort level" in that Guercio was not selling the illegal devices from his home, seemingly suggesting that distance between a buyer and seller is desirable in the trade. (*Id.*) And that such marketing often occurs across state lines is evidenced by J.E.S. and Global, both California-based operations, selling pirate descramblers to defendant in New York.

Of course, if the descramblers purchased by defendant were usable *solely* within Cablevision's market area of Nassau and Suffolk Counties then the location of the prospective customers targeted by Guercio would be defined, in effect, by the geographical limitations of the product. But such is not the case. Instead, once a device has been modified it may be used in "every system that uses that technology of scrambling." (Tr. at 130.) As explained by Burgeles, "a base band box, base band converter from California that's been cheated will work in New York as well." (*Id.* at 131.) Moreover, the following pages of the trial transcript indicate that the devices purchased by defendant were usable in other areas of the country besides the bi-county area serviced by Cablevision: 123 (Jerrold converter and decoder from California could be used in, e.g., Pennsylvania if it was illegally modified); 145 (the SA–3B device purchased by defendant from Global on February 2, 1990 "could be used in any system using early versions of General Instrument's scrambling/descrambling or Scientific Atlantic scrambling/descrambling"); 151–52 ("TB" Units reflected as being purchased by defendant in plaintiffs' exhibit 2 are compatible with "any system manufactured by General Instrument that was using one of our several modes of . . . scrambler" from 1979 to the present); 227 (the mere fact that the purchaser of the descramblers lives in a certain location does not mean

that it will be used in that area, but indeed could be used in other parts of the country); 238 (a modified Jerrold could be sold in approximately 60% of the cable market in the United States); 251–52 (a correctly modified Pioneer device would work on any Pioneer System, a Zenith on any Zenith system, and the same is true with respect to a correctly modified Scientific device in the sense it would work on a Scientific system anywhere in the country).

In sum, credible evidence at trial indicates that the items purchased by defendant could have been used in a number of different locations throughout the country. In fact, some of the items that were purchased by defendant as reflected in plaintiffs' exhibit 2, viz., "the Zenith items" were "*not* . . . compatible" with the scrambling technology that Cablevision was using at the time. (*Id.* at 268–69 (emphasis added).)

3. *Conclusions Regarding Cablevision's Claims That Defendant Violated Provisions of the Federal Communications Act by Selling Pirate Descramblers*

In sum, plaintiffs have established defendant purchased a number of descrambling devices, which devices were intended for resale. Yet there is no evidence, circumstantial or otherwise, to indicate that such sales, if made by Guercio, were made to customers within the market area serviced by plaintiffs. If made to individuals outside the market area, other cable companies are the victims, not Cablevision. As a result, Cablevision has not established that it is an aggrieved party. Accordingly, it has no viable claim for damages against defendant.

4. *Plaintiffs Have Failed to Prove That Defendant Personally Used One or More of the Devices*

■ Defendant subscribed to the Family Cable Services from Cablevision for the

period from 1989 to 1994. There is no evidence that he decreased the level of his Cablevision service following his receipt of descramblers during 1990 and 1991, which change (assuming Family Cable Services is not the lowest tier provided) arguably would be some evidence of his usage of an illegal device. *Cf. Cablevision Sys. v. Lokshin,* 980 F.Supp. 107, 114 (E.D.N.Y. 1997). No information was developed from defendant, his family members or neighbors indicating that they viewed television shows at the Guercio home beyond those subscribed to by defendant. In sum, there is a lack of information indicating whether defendant personally used one or more of the items which he apparently purchased for resale.

5. *Plaintiffs Have Failed to Establish That an Injunction Should Issue in This Case*

 The evidence indicates that Cablevision operators change their scrambling systems from time to time (Tr. at 48; 274–75), and that "problems" typically develop with pirate descrambling devices after about seven years (*id.* at 274–75). That information calls into serious question whether the devices purchased by defendant in 1990 and 1991 are still usable or marketable. Plaintiff has proffered no evidence to indicate that they are and that, as a result, Cablevision remains at risk absent the issuance of an injunction. Additionally, plaintiffs have failed to establish that it is an aggrieved party in the sense that Guercio used, or sold one or more descrambling devices for use in Nassau or Suffolk County or, more importantly for present purposes, that he is likely to do so in the future. Accordingly, plaintiffs' application for injunctive relief is denied.

### CONCLUSION

For the reasons indicated, plaintiffs' complaints are dismissed and judgment is entered in favor of defendant. The above constitutes the Court's Findings of Fact and Conclusions of Law. The Clerk of Court is directed to close these cases and enter judgment accordingly.

SO ORDERED.