**DIRECTV, INC., Plaintiff/Counter–Defendant,**

v.

**Mel BOONSTRA, Jr., Defendant/Counter–Plaintiff and Third Party Plaintiff**

v.

**Hughes Electronics, Third Party Defendant.**

**No. 1:03–CV–163.**

United States District Court, W.D. Michigan, Southern Division.

Feb. 2, 2004.

Angela M. Brown, Angela Emlet Dardas, Janice Keays Smith, Lansing, MI, for plaintiff.

Fredrick W. Jensen, Jr., Allegan, MI, for defendant.

## OPINION

QUIST, District Judge.

Plaintiff, DIRECTV, Inc. ("DIRECTV"), has sued Defendant, Mel Boonstra Jr. ("Boonstra"), alleging that he violated the Federal Communications Act of 1934, 47 U.S.C. § 605, the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, and the Communications Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§ 2510–22 (the "Wiretap Act"), and Michigan common law by purchasing and using access cards and other devices ("Pirate Access Devices") to decrypt, receive, and view DIRECTV's encrypted satellite transmissions of television programming. DIRECTV seeks injunctive relief, statutory damages, or, in the alternative, compensatory and punitive damages, attorney fees and costs. Now before the Court are DIRECTV's motion for summary judgment on its claim under the Federal Communications Act and the Wiretap Act and Boonstra's motion for summary judgment on all of DIRECTV's claims.

### I. Facts

DIRECTV is one of the nation's largest providers of satellite television program-

ming. DIRECTV delivers its broadcasts throughout the United States to customers who have paid a subscription fee. In order to receive the broadcasts, a DIRECTV subscriber must possess a satellite dish, an integrated receiver/decoder, and an access card to unscramble the signals. DIRECTV provides this equipment to its subscribers either for free or for a small fee. The access card, otherwise known as an ISO–7816 compliant smart card, is roughly the size of a credit card and contains a small microprocessor chip that is inserted into a DIRECTV receiver. DIRECTV programs the subscriber's access card with data corresponding to the subscriber's level of service. In other words, the cards are electronically programmed to block or unblock television channels and specific programs to include only the programming for which the subscriber has paid.

In spite of DIRECTV's efforts to prevent unauthorized reception and use of its programming, individuals have sought to illegally decrypt and intercept DIRECTV's signal without authorization by use of various Pirate Access Devices. Although Pirate Access Devices vary in type, they essentially allow the user to modify the access card to circumvent DIRECTV's security measures and decode its satellite signals.

On May 25, 2001, DIRECTV executed writs of seizure at the mail shipping facility used by several major suppliers of Pirate Access Devices, including Vector Technologies; DSS–Stuff; Shutt, Inc.; Intertek; WhiteViper; and DSS–Hangout (the "Suppliers"). Among other things, DIRECTV obtained shipping records, email communications, and credit card receipts identifying purchasers, or end-users, of illegal Pirate Access Devices from the Suppliers. DIRECTV used that information to obtain settlements (including monetary payments, stipulated injunctive relief, and turnover of the devices) from end-users or, failing a settlement, to sue end-users in federal court. This is one of perhaps thousands of suits DIRECTV has filed throughout the country against end-users.

On or about December 8, 2000, Boonstra purchased a Viper Smart Card Reader/Writer ("Reader/Writer") from WhiteViper Technologies. (Boonstra Dep. at 29 & Dep. Ex. 1, Pl.'s Br. Supp. Mot. Ex. 2.) On or about December 18, 2000, Boonstra purchased a WhiteViper Super Unlooper with X Code ("Unlooper") from WhiteViper Technologies. (*Id.* at 28–29 & Dep. Ex. 1.) At the time Boonstra ordered the devices, he was a DIRECTV subscriber and possessed all of the necessary equipment to receive DIRECTV's satellite signals. (*Id.* at 13–14, 31–32.) Boonstra purchased the Reader/Writer, or programmer, at least in part, to program access cards in order to receive free DIRECTV. (*Id.* at 23.) After he received the Reader/Writer, Boonstra plugged it into his computer and inserted a card into the Reader/Writer. (*Id.* at 23–24.) Boonstra testified that he was unable to receive DIRECTV programming and was advised that he needed an unlooper to make it work. Boonstra testified that he then ordered an unlooper, but he was unsuccessful in using it to receive DIRECTV signals. (*Id.* at 24.) Boonstra testified that after attempting to use each device once, he gave them away to his brother-in-law, who threw them away after he was unable to use them to receive DIRECTV signals. (*Id.* at 24–25.)

## II. *Summary Judgment Standard*

■ Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### III. *Discussion*

In its complaint, DIRECTV asserts four separate claims, including: (1) unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a); (2) unauthorized interception of satellite communications in violation of 18 U.S.C. § 2511(1)(a); (3) possession of pirate access devices in violation of 18 U.S.C. 2512(1)(b)[1]; and (4) conversion. DIRECTV has stated that it will not pursue the third and fourth claims against Boonstra and that those claims should be considered withdrawn. (Pl.'s Br. Opp'n Def.'s Mot. at 8 n. 2.) Thus, the only claims before the Court are DIRECTV's claims under 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a).

DIRECTV has moved for summary judgment on its claim under 18 U.S.C. §§ 2511(1)(a), (2)(d), and 2520, on the ground that Boonstra has admitted to violating these statutes by intercepting DI-RECTV programming for a tortious or unlawful purpose. DIRECTV has also moved for summary judgment on the basis that Boonstra violated 47 U.S.C. § 605(e)(4) when he gave both of the devices to his brother-in-law. Boonstra has moved for summary judgment as to DI-RECTV's claims on the ground that DI-RECTV has failed to create a genuine issue of material fact as to the alleged violations of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a). Boonstra further argues that DIRECTV has failed to state a claim under 18 U.S.C. § 2511(1)(a).[2]

### A. DIRECTV's Motion For Summary Judgment

#### 1. Violation of §§ 2511(1)(a) and 2520(a)

■ DIRECTV contends that it is entitled to summary judgment on its claim that Boonstra violated 18 U.S.C. § 2511(1)(a) because Boonstra's admissions are sufficient to show that Boonstra "intercepted" DIRECTV's satellite signals. Section 2511(1)(a) imposes criminal liability upon any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). In addition, 18 U.S.C. § 2520(a) creates a private cause of action for violations of § 2511. *DIRECTV, Inc. v. Hosey*, 289 F.Supp.2d 1259, 1264 (D.Kan.2003); *DIRECTV, Inc. v. Childers*, 274 F.Supp.2d 1287, 1288 (M.D.Ala.2003); *Directv, Inc. v. Jerolleman*, No. Civ. A. 03–1465, 2003 WL 22697177, at *2

---

1. This claim is actually denominated as possession of pirate access devices in violation of 18 U.S.C. § 2511(1)(b) but the Court understands this claim to be based upon § 2512(1)(b) in light of the references to § 2512(1)(b) in the body of the claim as well as the Court's review of the statutes.

2. Boonstra also raises the same arguments in his motion with regard to DIRECTV's claims under 18 U.S.C. § 2512. However, the Court need not address those arguments because, as noted, DIRECTV has expressly withdrawn its claim based upon § 2512. Therefore, that claim and the conversion claim will be dismissed with prejudice.

827

(E.D.La. Nov. 12, 2003). That section provides:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).

■ DIRECTV argues that it is entitled to summary judgment even though Boonstra denies that he was able to view any DIRECTV programming beyond that provided by his subscription. DIRECTV theorizes that all DIRECTV subscribers, regardless of whether they are legitimate users or are attempting to access additional programming without authorization, "intercept" DIRECTV's satellite signals for purposes of §§ 2511(a)(1) and 2520(a) whenever their receivers are turned on. DIRECTV notes that the datastream for the entire range of DIRECTV programming is sent to every subscriber, and DIRECTV uses the access card and receiver in tandem to permit the user to decrypt the portions of the signal they are authorize to receive. Thus, according to DIRECTV, the subscriber's "interception" is unlawful only when he or she attempts to view unauthorized programming. DIRECTV contends that its position is consistent with the exception provided in § 2511(2)(d), which provides:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).

DIRECTV's argument must be rejected because it conveniently ignores several pertinent statutory provisions, most notably, the definition of "intercept," which "means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). In turn, the term " 'contents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Thus, under the plain statutory definition, a person must acquire, by sound or other means, the contents of a communication in order to "intercept" it. *See Sanders v. Robert Bosch Corp.,* 38 F.3d 736, 742–43 (4th Cir.1994) (concluding that no interception occurred because there was no evidence that any of the defendant's employees "ever listened to, recorded, or otherwise acquired any conversations"); *Thomas v. Ohio Dep't of Rehab. & Corr.,* 36 F.Supp.2d 997, 999 (S.D.Ohio 1998) ("There is no 'interception' by a person or entity that never acquires the contents of any conversation."). DIRECTV fails to cite any case law supporting its rather novel proposition that a person can intercept a communication for purposes of §§ 2511 or 2520 without acquiring, in some way, the contents of the communication.[3] In light of the definition of "intercept" quoted above, DIRECTV's argument is without merit.

**3.** DIRECTV's reliance upon § 2511(2)(d) is misplaced, as there must be an interception in order for that section to apply.

Moreover, DIRECTV has failed to present any evidence showing that there is no genuine issue of material of fact regarding Boonstra's interception of DIRECTV programming. Therefore, DIRECTV's motion for summary judgment will be denied.

### 2. Violation of § 605(e)(4)

DIRECTV contends that the evidence before the Court shows that Boonstra violated 47 U.S.C. § 605(e)(4) when he gave the Reader/Writer and Unlooper to his brother-in-law. Section 605(e)(4) provides:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a), shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

47 U.S.C. § 605(e)(4). In addition to giving rise to criminal liability, a violation of § 605(e)(4) also gives rise to a civil cause of action in favor of "[a]ny person aggrieved by [such] violation." 47 U.S.C. § 605(e)(3)(A). Civil remedies include injunctive relief, actual or statutory damages, and costs and attorneys' fees. 47 U.S.C. § 605(e)(3)(B), (C).

DIRECTV contends that it has established that Boonstra violated § 605(e)(4) because Boonstra admitted that he gave or "distributed" the Reader/Writer and Unlooper to his brother-in-law. Moreover, DIRECTV argues, both devices were electronic devices which Boonstra knew or had reason to know were primarily of assistance in the unauthorized decryption of satellite programming. With regard to this point, DIRECTV cites testimony by its expert witness that the sole practical purpose of the Unlooper was to assist in the unauthorized decryption of DIRECTV's satellite signals. DIRECTV also cites Boonstra's own testimony that he purchased both the Reader/Writer and Unlooper for use in receiving free DIRECTV and that he gave the devices to his brother-in-law for the express purpose of using them to receive DIRECTV signals.

■ Boonstra responds that DIRECTV's argument must be rejected for a number of reasons. Boonstra first points out that DIRECTV has not specifically pled any claim under 47 U.S.C. § 605(e)(4), but instead has only pled a claim of unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a). Based upon its review of DIRECTV's complaint, the Court notes that Boonstra is correct that DIRECTV did not specifically allege a separate claim for violation of § 605(e)(4). However, the Court rejects Boonstra's argument because the complaint can be fairly construed to seek relief for a violation of § 605(e)(4). Rule 8(f) of the Federal Rules of Civil Procedure provides that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). Mindful of this command, the Court concludes that the complaint provides fair notice to Boonstra of a claim under § 605(e)(4). In particular, the complaint states in general allegations that Boonstra's actions violated 47 U.S.C. § 605 and that the action arises under that section, (Compl.¶¶ 5, 8), and in the prayer for relief it specifically requests that the Court find that Boonstra's conduct violated 47 U.S.C.

§ 605(e)(4) and award damages for each violation of that section. Therefore, the Court concludes that the complaint provided Boonstra adequate notice of a possible claim under § 605(e)(4).

■ Boonstra next argues that DIRECTV may not maintain a claim based upon a violation of § 605(e)(4) because DIRECTV is not "aggrieved" by a violation of that section. The term "any person aggrieved" includes

> any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and, in the case of a violation of paragraph (4) of subsection (e), shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming.

47 U.S.C. § 605(d)(6). Boonstra contends that there is a genuine issue of material fact regarding whether DIRECTV is an "aggrieved person" because DIRECTV has not shown that Boonstra intercepted its satellite signals. While Boonstra is correct with respect that any claim under § 605(a) requires an interception, his argument ignores the explicit language of § 605(d)(6) stating that a person engaged in the lawful sale of equipment necessary to authorize or receive satellite programming has standing to sue for violations of § 605(e)(4). DIRECTV has presented evidence that it sells and distributes equipment that is required to receive its satellite programming. (Mader Aff. ¶ 3, Pl.'s Reply Br. Supp. Mot. Ex. 1.) Therefore, DIRECTV has standing to maintain a claim for violation of § 605(e)(4).[4]

■ Boonstra also contends that DIRECTV has failed to show that he violated § 605(e)(4) because Boonstra testified that to his knowledge smart card programmers are multi-purpose devices and because Boonstra only gave the devices to his brother-in-law to test their functionality. The Court rejects these arguments in light of Boonstra's candid admissions in his deposition testimony. First, while Boonstra stated that he was interested in the Reader/Writer for its possible application in personal computer security, he stated that he purchased the device also for the purpose of modifying DIRECTV access cards in order to receive programming. Second, Boonstra's testimony about what he did with both the Reader/Writer and the Unlooper shows that Boonstra's primary, if not sole purpose, for using the devices was to obtain DIRECTV satellite signals. Boonstra testified that when he received the Reader/Writer he attempted to use it one time to modify a DIRECTV access card but was unsuccessful. He then ordered the Unlooper and also attempted to use it one time to modify a DIRECTV access card but was also unsuccessful. Boonstra did not testify that he attempted

---

4. Boonstra does not contend that DIRECTV is not an aggrieved person because it does not sell or distribute equipment necessary to receive "satellite cable programming." This could be a plausible argument based upon the definition of "satellite cable programming," which "means video programming which is transmitted via satellite and which is primarily intended for the direct receipt by cable operators for their transmission to cable subscribers." 47 U.S.C. § 605(d)(1). DIRECTV's satellite programming does not fall within this definition because it is not transmitted to cable operators for retransmission to cable subscribers. Even if Boonstra made such an argument, the Court would still find that DIRECTV has standing to assert a claim for violation of § 605(e)(4) because the statute does not limit the definition of "aggrieved" persons only to those expressly identified in the definition. Rather, the use of the word "include" is non-limiting and indicates that it is a non-exclusive description of potential plaintiffs. *See Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 65 F.Supp.2d 662, 667 (N.D.Ohio 1999).

to use the devices for any other purposes. Third, Boonstra testified that after failing to get the devices to work, he gave the devices to his brother-in-law, who "did the same thing [Boonstra] did" and then threw the devices away. (Boonstra Dep. at 24.) Thus, based upon his own admissions, Boonstra was aware that the devices were primarily of assistance in the unauthorized decryption of satellite signals or were intended for the unauthorized interception of DIRECTV's signals in violation of § 605(a). Accordingly, there is no genuine issue of material fact that Boonstra violated § 605(e)(4).

■ The remaining issue with regard to this violation is damages. For violations of § 605(e)(4), a court is authorized to award either actual damages, 47 U.S.C. § 605(e)(3)(C)(i)(I), or "for each violation ... statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just," 47 U.S.C. § 605(e)(3)(C)(i)(II). DIRECTV requests an award of statutory damages in the minimum amount for both violations, or $20,000. Boonstra has not presented any argument with regard to the issue of damages. However, a court may, in its discretion, reduce the statutory damages to $250 when it "finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section." 47 U.S.C. § 605(e)(3)(C)(iii). "The Court should exercise this discretion only in 'those rare instances of ignorance of the law on the part of one adjudged to have violated it.' " *Joe Hand Promotions, Inc. v. D.M.B. Ventures, Inc.*, No. Civ. A. No. 93–2656, 1995 WL 683847, at *2 (E.D.La. Nov. 14, 1995) (quoting 130 Cong. Rec. 31,875 (Statement of Sen. R. Packwood), *reprinted in* 1984 USCCAN, at 4750–51). Such a reduction may be appropriate where there is no evidence that the defendant knew that he was violating the law. *See Don King Prods./Kingvision v. Lovato*, No. C–95–2827 (THE), 1996 WL 682006, at *4

(N.D.Cal. Nov. 15, 1996). Because neither party has addressed whether the reduction may be appropriate in this case, the Court will allow that parties to present evidence and/or argument on the issue of damages at trial. DIRECTV is entitled to an award of reasonable attorney's fees and costs. The Court will order that DIRECTV submit an itemization of its attorneys' fees and costs upon entry of the final judgment in this case.

## B. Boonstra's Motion For Summary Judgment

### 1. Violation Of 47 U.S.C. § 605(a)

In its first claim, DIRECTV alleges that Boonstra received and assisted others in receiving DIRECTV's satellite transmissions in violation of 47 U.S.C. § 605(a). That provision states, in pertinent part:

[N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena [sic] issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communi-

cation to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a). Any person aggrieved by a violation of subsection (a) may bring a civil action in federal court. 47 U.S.C. § 605(e)(3)(A). In order to prevail on its claim under this section, DIRECTV must prove that Boonstra received, assisted in receiving, or intercepted DIRECTV satellite transmissions. *See DirecTV, Inc. v. Moreno,* No. 03–2478(JEI), 2003 WL 22927883, at *2 (D.N.J. Dec. 11, 2003); *DirecTV, Inc. v. Karpinsky,* 269 F.Supp.2d 918, 926 (E.D.Mich.2003), *vacated in part upon reconsideration,* 274 F.Supp.2d 918 (E.D.Mich.2003); *Joe Hand Promotions, Inc. v. Rennard Street Enters., Inc.,* 975 F.Supp. 746, 753 (E.D.Pa.1997).

In spite of his admissions that he possessed all of the equipment necessary to receive DIRECTV's satellite signals and that he attempted to use the reprogrammed access card in order to receive free DIRECTV programming, Boonstra contends that he is entitled to summary judgment because he has testified that he was never able to receive DIRECTV's signals. Boonstra contends that there is no genuine issue as to whether he actually received DIRECTV programming without authorization because DIRECTV has no evidence showing that Boonstra actually received or intercepted DIRECTV's signal. In support of his argument, Boonstra relies heavily upon *V Cable, Inc. v. Guercio,* 148 F.Supp.2d 236 (E.D.N.Y.2001), which Boonstra asserts is on point with this case. In *V Cable,* the plaintiff alleged that the defendant violated 47 U.S.C. § 605(a) by purchasing and using or distributing pirate cable descrambling devices. The court held that the plaintiff failed to show that it was an "aggrieved party" entitled to bring an action for violation of § 605(a) because there was no evidence that the defendant distributed or used the pirate devices within the plaintiff's market area or elsewhere. The court stated:

A perusal of the statutes underlying the present action indicates that it is not a crime, nor a basis for a civil claim, for an individual to purchase or possess pirate descrambling devices, even if it appears that possession is with the intent to distribute....

. . . . .

Cablevision concedes that it has no direct evidence that defendant either used or distributed any of the items purchased from either Global or J.E.S. Moreover, it has offered no evidence, such as unexplained bank deposits in amounts suggesting he was selling de-

scramblers, or other circumstantial evidence of sale.

*Id.* at 242–43. In addition, the court held that the plaintiff failed to show that the defendant used one or more of the descramblers. The court observed that there was no evidence that the defendant decreased the level of his cable service following his receipt of the descramblers, which "arguably would be some evidence of his usage of an illegal device," and there was no testimony from the defendant, his family members, or neighbors, that they viewed programming beyond that covered by the defendant's subscription. *Id.* at 244–45. Boonstra contends that as in *V Cable,* there is no evidence that he actually received additional DIRECTV programming.[5]

DIRECTV counters that *V Cable* is inapposite to this case because it was not, as Boonstra claims, a summary judgment opinion, but instead was the district court's findings of fact and conclusions of law after a trial. In addition, DIRECTV contends that *V Cable* is distinguishable because the plaintiff in *V Cable* relied solely upon evidence that the defendant purchased pirate cable devices, whereas DIRECTV has presented substantially more evidence showing that Boonstra actually intercepted or received DIRECTV's satellite signal. In particular, DIRECTV contends that the following evidence is sufficient to create a genuine issue of fact as to whether Boonstra actually intercepted DIRECTV's satellite signal: (1) Boonstra owned all of the equipment necessary to intercept DIRECTV satellite signals; (2) Boonstra bought the Reader/Writer and the Unlooper, devices whose sole purposes are to modify DIRECTV access cards to disable their security features and to reprogram such cards; (3) Boonstra actually attempted to use the devices in order to intercept, decrypt, and view DIRECTV programming without authorization; (4) Boonstra's purchase of the Unlooper is evidence that he already possessed an illegally modified DIRECTV access card or

5. On January 30, 2004, Boonstra filed a Notice of Supplemental Authority attaching copies of thirteen opinions and/or orders from other district courts in various DIRECTV cases. The bulk of the opinions and/or orders dealt with the issue of whether DIRECTV may maintain a claim for violation of 18 U.S.C. § 2512 based upon mere possession of a Pirate Access Device. Those opinions and orders are not relevant to the issues in these cases in light of DIRECTV's express withdrawal of its claim under § 2512. Only two of the cited opinions addressed DIRECTV's claim under § 2511 for actual interception. The first, an order from the Eastern District of North Carolina, held that DIRECTV is not entitled to bring a claim under 18 U.S.C. § 2520 based upon a violation of § 2511 because the damages provision, subsection (c), provides for damages only where the defendant views a satellite video transmission that is not scrambled or encrypted. The Court disagrees with this conclusion because subsection (c)(2) provides for actual or statutory damages "[i]n any other action," which would include the situation here, where the satellite signal is scrambled or encrypted. *See* 18 U.S.C. § 2520(c)(2). The second opinion and order pertaining to a DIRECTV claim under § 2511 is the opinion in *DIRECTV, Inc. v. Cavanaugh,* NO. 03–60001 (E.D.Mich. Nov. 18, 2003). The opinion in *Cavanaugh* does not help Boonstra, because the court in that case held that DIRECTV's circumstantial evidence was sufficient to defeat the defendant's motion for summary judgment. The defendant denied that he used the device to intercept DIRECTV's signal. DIRECTV's evidence was that: (1) the defendant was a DIRECTV subscriber; (2) the defendant purchased a pirate device; (3) the defendant's account history with DIRECTV showed decreases in subscription to premium channels or movies that corresponded with the dates of purchase of the pirate devices; and (4) the defendant complained of equipment failure that likely resulted from illegal tampering. The court held that the evidence "support[ed] the reasonable inference that signal theft did in fact occur." *DIRECTV, Inc. v. Cavanaugh,* No. 03–60001, slip op. at 9 (E.D.Mich. Nov. 18, 2003).

that he intended to use the Unlooper to modify DIRECTV access cards in the future; and (5) Boonstra's subscriber history provides further evidence that Boonstra actually received or intercepted DIRECTV programming.

DIRECTV contends that the opinions in *DirecTV v. Karpinsky* show that DIRECTV has presented more than sufficient evidence to survive Boonstra's motion for summary judgment. In *Karpinsky*, the defendant moved for summary judgment based upon his testimony that he was not and never had been a DIRECTV subscriber and that he did not possess the satellite dish and receiver required to receive DIRECTV's satellite transmissions. *DirecTV v. Karpinsky*, 269 F.Supp.2d 918, 926 (E.D.Mich.2003). DIRECTV failed to offer evidence rebutting the defendant's evidence, however, it opposed the motion by citing (1) the defendant's purchase and possession of two "Smartcard Recovery System" devices in 2001; (2) statements by DIRECTV's vice president to the effect that the devices had no legitimate personal or commercial use, other than to assist in the interception and decryption of DIRECTV signals; and (3) statements by the vice president that anyone who visited the website of the company from which the defendant purchased the device would know that the devices were advertised primarily for use in illegal reception of DIRECTV's signals. The court concluded that while DIRECTV's evidence raised a possible inference that the defendant possessed the devices knowing that they were primarily used to unlawfully intercept DIRECTV signals, a reasonable fact-finder could not infer that the defendant unlawfully intercepted DIRECTV's signals in light of the evidence that the defendant was not a DIRECTV subscriber and did not possess the equipment needed to intercept the signals. *Id.* at 927. Shortly after the court granted summary judgment to the defendant, DIRECTV moved for reconsideration, citing evidence indicating that the defendant had in fact purchased a DIRECTV system and therefore had the ability to intercept DIRECTV's signals. *Directv v. Karpinsky*, 274 F.Supp.2d 918, 921 (E.D.Mich.2003). The court granted the motion because it found that based upon the new evidence, a reasonable fact-finder could infer that the defendant did in fact unlawfully intercept or aid in intercepting DIRECTV's signals using the devices. *Id.* DIRECTV contends that the *Karpinsky* opinions, considered together, implicitly support the proposition that a defendant's purchase of a Pirate Access Device, coupled with evidence of the defendant's purchase or possession of a DIRECTV satellite system, is sufficient to withstand a motion for summary judgment.

A plaintiff need not produce direct evidence to establish that a communication was received or intercepted, but may rely upon circumstantial evidence to do so. *See Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir.1990) (holding that circumstantial evidence may be used to prove a wiretap claim, including actual interception). In spite of the large number of cases DIRECTV has filed against end-users such as Boonstra, to this Court's knowledge, no court has expressly addressed the sufficiency of circumstantial proof required for DIRECTV to establish actual interception of its satellite signals when a defendant claims that he attempted but was unable to use a Pirate Access Device to actually receive or intercept DIRECTV's signal. However, the Court finds some guidance from eavesdropping cases under the Wiretap Act.

In *Ages Group L.P. v. Raytheon Aircraft Co., Inc.,* 22 F.Supp.2d 1310 (M.D.Ala.1998), the court found that the plaintiff presented sufficient evidence to survive the defendant's motion for summary judgment. The defendant argued that the evidence showed that there was only video surveillance, which was not illegal, without interception of the contents of any communications. Although the court stated that "proof of possession of equipment used to intercept oral communications could certainly be part of [the plaintiff's] proof that oral communications were intercepted," the claim survived because there was other substantial evidence, including eyewitness testimony showing that the defendant's employees were using listening devices. *Id.* at 1316. The court rejected the defendant's argument that even if its agents possessed equipment capable of intercepting communications, there was no evidence that the communications were actually intercepted. The court noted that the circumstantial evidence established that the agents possessed equipment consistent with monitoring and receiving oral communications and that one of the agents was observed wearing a headset which would only be used if the microphone and recorder were being used. *Id.* at 1318–19.

In *Gross v. Taylor,* No. Civ. A. 96–6514, 1997 WL 535872 (E.D.Pa. Aug. 5, 1997), two police officers sued the police chief, two sergeants, the police department, and others alleging, among other things, violations of the federal and state wiretap laws. The police department had installed audiovisual surveillance systems in certain patrol cars for the purposes of collecting evidence and protecting the police from liability. The systems included a microphone which was installed in the back seat of the car. The existence of the rear-seat microphone was apparently not disclosed to the officers during the training session for use of the system. Prior to the training, the plaintiffs discovered the existence of the rear-seat microphones, but they did not share the information with their supervisors until almost a month later, when another officer discovered that his system recorded sound as well as video. The police department removed the rear-seat microphones within two days of learning of their existence. The court held that the defendants were entitled to summary judgment on the wiretap claims because, among other things, the plaintiffs failed to present evidence establishing an actual interception. In its analysis, the court found or assumed that both plaintiffs established that they used a patrol car which was equipped with a rear-seat microphone during the relevant time period and that the system was capable of recording sounds. *Id.* at *5. However, the court concluded that such evidence was insufficient to create a genuine issue of fact about whether there was an actual interception because the plaintiffs failed to "present[ ] any evidence substantiating any claim beyond that they were in cars with systems capable of recording." *Id.* The court acknowledged the difficulties a plaintiff faces in proving a wiretap claim and that because of those difficulties courts have held that direct evidence of specific conversations is not necessary, but it observed that those cases do not allow a plaintiff to establish a claim upon "the barest of circumstantial evidence." *Id.* at *6. The court noted that in cases allowing proof by circumstantial evidence, the evidence was "substantial" and included "statements by the defendants to third parties that they engaged in wiretapping, evidence of targeting the plaintiffs for bugging by installing a microphone in his or her office, actual tapes of intercepted conversations, evidence of a pattern of wiretapping, and testimony that the defendant was remotely monitoring the plaintiff." *Id.* The court concluded that summary judgment was appropriate, given the absence of such evidence in that case.

 *Ages Group* and *Gross* both establish that it is not enough for a plaintiff merely to show that a defendant possessed equipment capable of intercepting a communication in order to show that the defendant actually received or intercepted the plaintiff's communication. Rather, the plaintiff must produce circumstantial evidence sufficient to support the conclusion that there was an actual inception. The unreported decision by the Southern District of Texas in *DIRECTV, Inc. v. Bush,* cited by Boonstra, applies this principle. In *Bush,* the court held that the defendant was entitled to summary judgment because, although it was undisputed that the defendant had purchased a pirate device, DIRECTV failed to show that the defendant possessed the equipment needed to intercept DIRECTV's satellite signal or actually used the device to intercept DIRECTV's signals. *DIRECTV v. Bush,* No. H–03–1765, slip op. at 6 (S.D.Tex. Oct. 27, 2003). This case differs from *Bush,* because here, DIRECTV has not only presented evidence that Boonstra purchased a Pirate Access Device, but also that: (1) Boonstra was a DIRECTV subscriber who possessed the necessary equipment to intercept DIRECTV's satellite signal; (2) Boonstra was aware that the Reader/Writer and the Unlooper could be used to alter his DIRECTV access card; (3) Boonstra attempted to use the devices to alter his card; and (4) the Unlooper was designed to alter DIRECTV access cards and was not designed for any other legitimate purpose.

The Court concludes that this evidence is sufficient to allow a reasonable fact-finder to infer that Boonstra actually received or intercepted DIRECTV's signals because it shows that Boonstra did more than merely possess the devices, but was actually targeting DIRECTV's satellite signals. Furthermore, although Boonstra has testified that he was unable to make the Reader/Writer and the Unlooper work and that he never received any DIRECTV programming beyond that for which he paid, DIRECTV has presented additional evidence which tends to refute Boonstra's testimony. In particular, DIRECTV contends that Boonstra's subscriber history, as summarized in DIRECTV's interrogatory answer, refutes Boonstra's claim that he was unable to intercept DIRECTV's signal. The interrogatory answer states:

Defendant's purchase of two pirate access devices in a short time period is strong evidence that he used those devices for their intended purpose, intercepting DIRECTV's satellite signals. Those purchases occurred in December 2000. That same month, DIRECTV discontinued his DIRECTV package subscription. This is consistent with DIRECTV's allegations that defendant began illegally intercepting its satellite signals at that time.

Moreover, as evidenced in his DIRECTV account history, defendant refused to connect his DIRECTV receiver via a phone line to a phone outlet in his home. The phone connection is DIRECTV's method of monitoring pay-per-view purchases, and people who are using pirated DIRECTV access cards to receive programming without authorization often disconnect their phone lines to facilitate the interception.

(Pl.'s Am. Objections & Resp. to Def.'s 1st Set of Interrogatories No. 11, Pl.'s Br. Opp'n Ex. 4.) [6]

---

**6.** DIRECTV has attached its records regarding Boonstra's subscriber history as an exhibit to its brief in opposition to Boonstra's motion but has made no attempt to elaborate on those records beyond what is stated in DIRECTV's interrogatory answer. The Court has reviewed the records and has attempted to make sense of the information, to the ex-

The Court concludes that this evidence is sufficient to create a genuine issue of material fact regarding whether Boonstra actually received or intercepted DIRECTV's signal. Evidence that Boonstra cancelled his DIRECTV subscription at or around the time that he purchased the Reader/Writer and the Unlooper is sufficient to create a genuine issue of material fact as to whether Boonstra received unauthorized DIRECTV programming. A reasonable fact-finder could infer from this evidence that Boonstra cancelled his DIRECTV service because he was successful in intercepting DIRECTV's signals without authorization. Accordingly, the Court will deny Boonstra's motion for summary judgment.

### 2. Violation Of 18 U.S.C. § 2511(1)(a)

■ As discussed above, in order to establish its claim that Boonstra violated § 2511(1)(a), DIRECTV must show that Boonstra intercepted DIRECTV's signal. For the same reasons that DIRECTV's evidence has created a genuine issue of material fact with respect to the claim under 47 U.S.C. § 605(a), the Court concludes that DIRECTV's evidence also creates a genuine issue of material fact with regard to Boonstra's interception of DIRECTV's signal under § 2511(1)(a). Therefore, the Court will also deny Boonstra's motion on this claim.

### 3. Failure To State A Claim Under § 2511(1)(a)

■ Boonstra argues that DIRECTV's claim under 18 U.S.C. § 2511 must be dismissed because that section is a criminal provision which does not provide for a civil cause of action. This argument must be rejected, because while § 2511 itself does not provide for a private right of action, it is well established that § 2520(a) provides a private right of action for viola-

tions of § 2511. *See DIRECTV, Inc. v. Cardona,* 1357, 1368–69 (M.D.Fla.2003); *Gunderson v. Gunderson,* No. 02–1078–CVW–ODS, 2003 WL 1873912, at *1 (W.D.Mo. Apr. 14, 2003); *DirecTV v. Westendorf,* No. 03 C 50210, 2003 WL 22139786, at *1 (N.D.Ill. Sept. 16, 2003); *In re DoubleClick Inc. Privacy Litig.,* 154 F.Supp.2d 497, 514 n. 22 (S.D.N.Y.2001). Boonstra's argument is really that DIRECTV fails to state a claim because it cites only § 2511 in its second claim and does not mention § 2520(a). However, DIRECTV cites § 2520(a) in its prayer for relief, and it is sufficiently clear that DIRECTV is alleging that Boonstra violated § 2511(1)(a) as part of its claim under § 2520(a). Thus, DIRECTV states a claim for violation of § 2511(1)(a).

### IV. *Conclusion*

For the foregoing reasons, the Court will grant in part and deny in part DIRECTV's motion for summary judgment and deny Boonstra's motion for summary judgment. The Court will dismiss DIRECTV's claim based upon the alleged violation of 18 U.S.C. § 2512 and DIRECTV's conversion claim with prejudice.

An Order consistent with this Opinion will be entered.

tent that the purport of the information is

apparent from the face of the documents.